REES-THOMSON-SCROGGINS, INC. v. HUBERT NELSON AND ANOTHER.

150 N. W. (2d) 568.

May 5, 1967—No. 40,375.

*Dorsey, Owen, Marquart, Windhorst & West* and *John M. Mason,* for appellant.

*Tanner, Thomson, Lovett & May* and *William M. Thomson,* for respondents.

ROGOSHESKE, JUSTICE.

A municipal court jury awarded plaintiff, a licensed real estate broker, $3,150 as a commission for selling defendants' home. The award was based upon a finding that plaintiff was the procuring cause of the sale. In response to a post-trial motion, the trial court granted defendants judgment notwithstanding the verdict essentially upon the ground that in view of the applicable principles of law the evidence did not justify the jury's finding. We affirm.

The essential facts are not in dispute. Defendants, sometime prior to 1962, purchased their home for $52,000, and in the fall of that year they gave oral permission to plaintiff and other brokers to sell it for $55,900. Plaintiff's efforts to find a purchaser began in August or September 1962. Plaintiff's agents showed various prospects the home, including Dr. Leo Weiss, a pathologist who came to Minnesota from California in July 1962 and who had begun looking for a Minnesota home for his wife and family still residing in California. Dr. Weiss sent pictures of defendants' home to his wife, who expressed her dislike for it. Nevertheless, plaintiff's agents induced the doctor on September 18, 1962, to make a written offer of $51,500. Defendants rejected it as too low, and the doctor refused to increase the offer because of his wife's attitude.

Mrs. Weiss came to Minnesota in November 1962, at which time the Weisses rented a house from Harry Shapiro, a brother-in-law of a physician with whom Dr. Weiss was acquainted. Mr. Shapiro lived next door to the house he owned and rented to the Weisses. His principal business was building and selling homes and commercial real estate. He was also a licensed real estate broker who had on occasion showed defendants' home to prospective purchasers as well as showing various

houses to Mrs. Weiss. From the time of her arrival, Mrs. Weiss was shown many houses by different brokers. Although the availability of defendants' home was discussed with her, she continued to express her lack of interest and did not go into it until March 22, 1963, when a salesman of plaintiff's, who had been showing her other homes, persuaded her to view the inside over her protest that she was still not interested and that if she were, she desired Mr. Shapiro to show it to her. At this time, plaintiff's salesman knew the Weisses had recently sold their California home. Shortly after Mrs. Weiss viewed the inside of defendants' home, she advised plaintiff's salesman that she was not interested. From this point on there is no evidence that the Weisses conducted or participated in any negotiations with anyone concerning the purchase of defendants' home. Further, it is undisputed that plaintiff made no further efforts of any kind to induce the Weisses to purchase the home or indeed to sell it to anyone.

While Mr. Shapiro did on occasion talk to Mrs. Weiss about defendants' home during the following months as the home was in the neighborhood, Mrs. Weiss refused to revisit it, saying that she had built up a mental block against it. In December 1963, when Mr. Shapiro was showing Mrs. Weiss other houses in the area, he persuaded her to again view defendants' home. Three or four weeks later, Dr. and Mrs. Weiss again visited the home with Mr. Shapiro and thereafter made an offer of $52,500, which defendants accepted. The sale. was completed in January 1964, Mr. Shapiro testifying that he "compromise[d]" his commission to either "$1,500 or $2,000" although the usual commission is 6 percent of the selling price.

The applicable principles of law are well stated in Neumeier v. Sperzel, 223 Minn. 60, 64, 25 N. W. (2d) 651, 653:

"A broker is not entitled to a commission unless he was the procuring cause of the sale; that is, it must have been the direct result of his efforts to bring it about, and a broker seeking to recover a commission has the burden of proving this affirmatively.

\* \* \* \* \*

"Procuring cause is the originating of a course of action which *with-*

*out break in continuity* results in reaching the goal of the employment, ordinarily a sale or exchange of the property. It is the efficient or effective means of bringing about the actual sale. It is not a question of whether the broker's influence persisted but whether it persisted to the end so as to become not a mere incidental or contributory cause, but it must be the efficient producing cause." (Italics supplied.)

Since the critical point on which this case turns is which broker's efforts induced the Weisses to resume negotiations and to agree to terms acceptable to defendants, it is evident that plaintiff did not sustain its burden of proving[1] that the efforts of its salesman were the procuring cause of the sale. Where there is a nonexclusive listing, finding a prospective buyer and promoting his interest to the point where he makes an offer unacceptable to the owner does not entitle the first broker to a commission where, after a substantial lapse of time in which the broker makes no further efforts to promote a sale and no further negotiations take place, a second broker induces the resumption of negotiations and a sale is made.[2] That the interest created by the first broker contributed to the final sale is not determinative. Provoking a prospect's interest is only a part of the broker's service, the determinant effort being to induce either the purchaser to meet the owner's terms or the owner to make concessions to meet the purchaser's offer. The test is whose efforts tipped the scale and induced the owner and purchaser to come to agreeable terms.[3]

The 8-month period during which no negotiations took place and

---

[1] It should be noted that the trial court erred in instructing the jury that the defendants had the burden of proving "that there was a break in * * * plaintiff's broker's negotiations."

[2] Thompson v. Harper, 225 Ark. 47, 279 S. W. (2d) 277; Canaday v. Brainard, 51 Del. 226, 144 A. (2d) 240; Shuler v. Allen (Fla.) 76 So. (2d) 879; Mammen v. Snodgrass, 13 Ill. App. (2d) 538, 142 N. E. (2d) 791; Jackley-Wiedman & Co. v. One Minute Washer Co. 220 Iowa 486, 262 N. W. 97, 101 A. L. R. 1216; Mattingly-Lusky Realty Co. v. Camper, 228 Ky. 407, 15 S. W. (2d) 240; Real Estate Enterprises v. Collins (Mo. App.) 256 S. W. (2d) 286; Withers v. Sohrweid, 198 Ore. 449, 257 P. (2d) 267.

[3] Rosenfield v. Wall, 94 Conn. 418, 109 A. 409, 9 A. L. R. 1189; Leimbach v. Nicholson, 219 Md. 440, 149 A. (2d) 411.

plaintiff made no effort to promote a sale requires the conclusion that as a matter of law plaintiff's efforts were not the "efficient producing cause" of the Weisses' and defendants' coming to terms. While defendants called no witnesses and appeared to make little effort to disclose the details of the final negotiations culminating in the sale, the most favorable view of the inferences to be drawn from the evidence compels a conclusion that plaintiff's efforts were at best only a contributing cause of the sale.

Affirmed.